**UNITED STATES of America, Appellee,**

v.

**Decaress SMITH, Defendant–Appellant.**

**No. 234, Docket 96–1826.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 11, 1998.

Decided Nov. 9, 1998.

David A. Lewis, New York, N.Y. (The Legal Aid Society, Federal Defender Division, Appeals Bureau, on the brief), for Defendant–Appellant.

Richard P. Maigret, Assistant United States Attorney, Buffalo, N.Y. (Denise E.

O'Donnell, United States Attorney for the Western District of New York, on the brief), for Appellee.

Before: FEINBERG and JACOBS, Circuit Judges, and POLLACK,* District Judge.

JACOBS, Circuit Judge:

Defendant-appellant Decaress Smith pleaded guilty in the United States District Court for the Western District of New York (Elfvin, *J.*) to one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g). In a statement to the Probation Office and then at his sentencing, Smith recounted that he was working at a youth center when he took possession of the gun briefly by confiscation from a gang member. This account suggests an inchoate defense of necessity. Without inquiry concerning such a possible defense, the district court entered judgment on the plea. On appeal, Smith argues that the district court's failure to explore his possible defense amounted to a violation of Fed.R.Crim.P. 11(f), which requires the district court to ascertain that there is an adequate factual basis for the plea. We affirm.

Smith's account did not negate any required element of the offense and therefore did not call into question the district court's previous finding that the facts were adequate to support the plea. At best, Smith's account suggested a possible affirmative defense of justification, as to which the court was under no obligation to seek a waiver. We therefore conclude that the court did not abuse its discretion in finding an adequate factual basis for the plea.

## BACKGROUND

The facts of the case are undisputed. On the night of April 7, 1996, Buffalo police responded to a report of shots fired near the intersection of Genesee and Latour Streets. The officers stopped Smith at the intersec-

---

* The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

tion, found that he was carrying a .380 caliber semi-automatic pistol, and arrested him.

Smith, who had a record of five felony convictions, agreed to plead guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). The plea agreement recited that Smith "knowingly and unlawfully" possessed the .380 caliber pistol at the time and place of his arrest, itemized his prior felony convictions, and stipulated that the gun in question had been shipped in interstate commerce.

At the plea allocution on September 20, 1996, Judge Elfvin read from the indictment, and ascertained that Smith had read and understood the plea agreement. After reviewing Smith's prior felonies, the judge said "you, against the law, unlawfully and knowingly had in your possession a firearm, a particular one, . . . this being in violation of a provision of the United States criminal law," and then inquired of Smith, "Do you understand what you're charged with in that?" Smith answered, "Yes, I do."

Later, the court concluded, "I am satisfied, Mr. Smith, that there is a factual basis for a plea to count one of the indictment." Smith's guilty plea was accepted.

The presentence report ("PSR") set forth the several facts of the case under the heading "offense conduct." In the section headed "adjustment for acceptance of responsibility," the PSR paraphrased Smith's statement explaining how he came by the gun:

> The defendant admitted his involvement in the instant offense. During the presentence interview, the defendant advised that on the date of the offense, he was working as a security guard (volunteer) and counselor at the Brothers and Sisters Alternatives to Violence Center located at 1237 Genesee Street, Buffalo, New York. The Center was having an Easter party for teenagers. Two (2) rival groups of teenagers started fighting which resulted in gunshots. The defendant advised he took the gun away from one of the kids and left the building. He advised that he was attempting to take the gun to a "safe house" on Latour Street. However, the police arrived, followed him, and arrested him for possessing the gun. The defendant re-

ported that there was one (1) discharged shell still in the gun, and he advised that he did not shoot the weapon.

The PSR recommended a three-point reduction in offense level for acceptance of responsibility.

At the sentencing hearing, Smith confirmed to the court that he had received the PSR and had discussed it with his lawyer, and his attorney interposed no objections to it.

In arguing for the minimum sentence under the Sentencing Guidelines, Smith's attorney noted his repeated run-ins with the law and acknowledged that Smith "ended up involved with this weapon and whichever way you take it he knew very clearly, as a prior felon, he shouldn't have anything to do with guns at all, but he did. . . ."

Speaking on his own behalf, Smith explained (as he had to the Probation Office) that he had confiscated the gun in order to prevent violence at the youth center:

> [T]his present incident is just a situation where we had a center and two groups of individuals came in there and I had possession of the pistol, because we didn't want anymore of the kids in the club to get shot at . . . [.][W]e run a center based on alternative[s] to violence and that was basically the reason why I had possession of the gun. Being on parole and everything and understanding I wasn't suppose[d] to have it, . . . and that was something that I thought about afterwards, and put me in this situation now, and all I can say is . . . I plead guilty to it, get the time, get over with it and try to elevate . . . to something a little . . . better when I get out the next time.

The court sentenced Smith to 210 months, the maximum sentence in his guideline range.

## DISCUSSION

■ The government raises the threshold argument that Smith waived his right to this appeal in his plea agreement. We disagree. Smith's plea agreement waived only his right to appeal his sentence, which is unchallenged

on appeal. Smith is arguing a Rule 11 violation, which the plea agreement did not foreclose. We therefore go to the merits.

■ Smith relies on Fed.R.Crim.P. 11(f):

> **Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

This language does not require the district court to weigh any evidence or predict what a jury would do with the case. The court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir.1997); *see also United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir.1988) ("Rule 11(f) requires an adequate factual basis for a guilty plea; it does not require the judge to replicate the trial that the prosecutor and defendant entered a plea agreement to avoid."). This step—matching the facts to the legal elements of the charged crime—is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (quoting Fed. R.Crim.P. 11 advisory committee notes).

■ The factual basis of the plea required by Rule 11(f) need not be drawn directly from the defendant. *See Maher*, 108 F.3d at 1524–25. The judge may look to answers provided by counsel for the defense and government, the presentence report, "or . . . whatever means is appropriate in a specific case"—so long as the factual basis is put on the record.[1] *Id.* at 1524; *see also McCarthy*, 394 U.S. at 463 n. 6, 89 S.Ct. at 1169 n. 6

(quoting 1974 Advisory Committee Note to Fed.R.Crim.P. 11(f)); *United States v. Baez*, 87 F.3d 805, 809 (6th Cir.) (holding that a district court need not "elicit detailed narrative responses from defendants" to satisfy Rule 11(f)), *cert. denied*, —— U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996); 1 Charles Alan Wright, *Federal Practice and Procedure* § 174 (2d ed. 1982 & Supp.1998). And if "the charge is uncomplicated, the indictment detailed and specific, and the [defendant's] admission unequivocal," then the reading of the indictment and the admission of the facts described in it satisfies Rule 11(f). *Godwin v. United States*, 687 F.2d 585, 590 (2d Cir.1982) *quoted in United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir. 1992). The Sixth Circuit has held that Rule 11(f) was satisfied when the plea agreement set out a factual basis for the charged crime, and the defendant agreed that it was accurate. *See Baez*, 87 F.3d at 810.

■ The district court's obligations under Rule 11(f) continue until it has entered judgment. If it decides there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant. *See* Fed.R.Crim.P. 11(f) ("*Notwithstanding the acceptance of a plea of guilty*, the court should not *enter a judgment* upon such plea without making such inquiry . . . .") (emphasis added); 1 Wright, *Federal Practice and Procedure* § 174.

■ Smith's brief on appeal raises two related issues regarding the adequacy of his guilty plea under Rule 11(f). First, Smith argues that, without regard to whether a possible necessity defense was raised, the district court failed to determine adequately that there was a factual basis for the plea, as Rule 11(f) requires. We think that there was a clear factual basis for the guilty plea, as Smith's counsel virtually acknowledged at oral argument.[2] The second issue is more

---

1. This flexibility differentiates Rule 11(f), which focuses on the *judge's* assessment that the facts of the case fit the elements of the crime, from Rule 11(c) which focuses on the *defendant* and his understanding of the proceedings and his rights: "**Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court

and inform the defendant of, and determine that the defendant understands the following ... [list follows]" Fed.R.Crim.P. 11(c).

2. Drawing information from all the permissible sources, the district court had adequately ascertained a factual basis for this plea by the time it entered judgment.

substantial: Following Smith's allusions to facts that might develop into a defense, was the district court required to assess on the record the validity of that defense? The precise issue under Rule 11(f) is whether the court's prior fact-finding as to the elements of the offense—which would ordinarily have been sufficient to satisfy Rule 11(f)—was rendered inadequate by the unexplored possibility of a justification defense. We review for abuse of discretion the district court's finding that the record furnishes a factual basis sufficient to support the plea. *See Godwin*, 687 F.2d at 590–91. We consider *de novo* whether the district court was required to weigh expressly the impact of a possible justification defense.

Smith relies heavily on *Godwin*, in which we found violations of both Rule 11(c) and 11(f). *See Godwin*, 687 F.2d at 589. Godwin, who was charged with conspiracy to sell or dispose of stolen art work, said at his plea hearing that he was not trying to sell the art, but rather to collect a reward for its return. *See id.* at 587. We held that under Rule 11(c) the district court should have advised Godwin that if his version of events—which tended to negate the required intent element of the crime—were to be raised at trial, the government would have to disprove it beyond a reasonable doubt. *See id.* at 589. Instead, the district court advised the defendant that his intent was irrelevant. *See id.*

The *Godwin* court also concluded that the same set of facts amounted to a violation of Rule 11(f) because the district court created an insufficient record of a factual basis for the plea. *See id.* at 590–91. We distinguished the facts in *Godwin* from the "usual case," in which a reading of the indictment is sufficient "with additional explanation required for the more complex offenses":

> This is the unusual case in which advising the defendant of the traditional elements

of the offense does not suffice, since the defendant's assertion of facts indicating an innocent state of mind required precise explanation of additional aspects of the intent necessary for conviction.

*Id.* at 589. In Godwin's case, "some circumstances must appear on the record to warrant a conclusion that the defendant's innocent version is unworthy of belief." *Id.* at 590.

Similarly, in *Montgomery v. United States*, 853 F.2d 83 (2d Cir.1988), this Court reversed a judgment of conviction after guilty plea because the defendant denied an essential element of the crime and was misled about its significance, in violation of Rule 11(f). Montgomery was charged with conspiracy, but at his plea hearing he denied having conspired with the person named in the indictment and admitted only to conspiring with a government agent and informant. *See id.* at 84. Although the defendant had thereby in effect denied the crime to which he was pleading, *see Montgomery*, 853 F.2d at 85 (citing *United States v. Barnes*, 604 F.2d 121, 161 (2d Cir.1979) (agreement with a government agent or informant does not amount to a conspiracy)), Montgomery's lawyer and the court erroneously advised him that conspiring with the agent and informant satisfied the requirements of the federal conspiracy statute. *See id.* at 84. The dispositive distinction for this appeal is that in both *Godwin* and *Montgomery*, the defendant had *denied an element of the offense* and was erroneously misled by the district court about the denial's legal significance. Absent further inquiry, the guilty plea rested on an inadequate factual basis.

 Smith does not benefit from *Godwin* and *Montgomery* because Smith's account of having confiscated the gun from a youngster in his charge did not subvert any

---

The three simple elements of the charged offense are (1) knowing possession of the firearm, (2) a previous felony conviction, and (3) the possession being in or affecting commerce. *See* 18 U.S.C. § 922(g). Judge Elfvin reasonably could have relied on at least two sources of information:

- The "factual basis" section of the plea agreement included facts supporting each element of the crime. By his signature on the agree-

ment and his subsequent plea colloquy, Smith attested that he had read the agreement, discussed it with his attorney, understood it, and found it to be accurate.
- At the plea hearing, the district court read the indictment, which recounted the factual basis of this uncomplicated crime, and drew from Smith his acknowledgment that he understood the charge.

0

element of the offense; he had confessed to all of them. At most, he alluded to an affirmative defense of justification (specifically the defense of necessity).[3] Such a defense advances a justification for breaking the law notwithstanding proof of all the elements of the offense. *See* 1 Wayne R. Lafave & Austin W. Scott, Jr., *Substantive Criminal Law* § 1.8, at 71 (1986); *id.* § 5.4, at 629 ("The rationale of the necessity defense is not that a person, when faced with the pressure of circumstances of nature, lacks the mental element which the crime in question requires."). Affirmative defenses such as necessity and duress typically impose, at the very least, a burden of production on the defendant. *See United States v. Bakhtiari,* 913 F.2d 1053, 1057–58 (2d Cir.1990) ("A defendant ... must present some evidence on all of the elements of the defense.") (internal quotation marks omitted); *United States v. Mitchell,* 725 F.2d 832, 836–37 (2d Cir. 1983); 1 LaFave & Scott § 1.8, at 75; ; *see also United States v. Newcomb,* 6 F.3d 1129, 1133 (6th Cir.1993) (noting that defendant bears the burden of persuasion for the defense of necessity to 18 U.S.C. § 922(g)).

Rule 11(f) requires the district court to establish a factual basis for each element of the crime to which the defendant is pleading. Further inquiry whenever a potentially viable defense emerges is doubtless good practice, but the court has no duty under Rule 11(f) to anticipate or detect, and then rule out, defenses such as necessity. *See Dismuke v. United States,* 864 F.2d 106, 107 (11th Cir.1989) ("Nothing in Rule 11 requires the trial judge to inform the defendant of every possible defense he may have."); *cf. United States v. Broce,* 488 U.S. 563, 573, 109 S.Ct. 757, 764, 102 L.Ed.2d 927 (1989) (refusing to allow withdrawal of pleas despite possible double jeopardy defenses: "Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty.") We hold that once a defendant has admitted to all the elements of an offense, the district court is not required to exercise discretion under Rule 11(f) to reopen its inquiry into the factual basis for the guilty plea in order to explore a possible defense of justification, at least where justification negates none of the offense elements.[4]

## CONCLUSION

The judgment of conviction is affirmed.

---

**3.** We need not decide whether Smith's account amounts to (or could develop into) a necessity defense, or whether necessity is a defense to 18 U.S.C. § 922(g).

The *Model Penal Code,* which describes this defense as "Choice of Evils," says it is available when (1) the defendant believes his conduct was "necessary to avoid a harm or evil to himself or to another"; (2) "the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the defense charged"; (3) no statute "provides exceptions or defenses dealing with the specific situation involved"; (4) there is no readily apparent legislative purpose to exclude the defense; and (5) the defendant was not reckless or negligent in bringing about the situation that he says required him to commit the offense. *See Model Penal Code* § 3.02. Other courts have also required that the defendant show that he "did not maintain the illegal conduct any longer than absolutely necessary." *See United States v. Newcomb,* 6 F.3d 1129, 1134–35 (6th Cir.1993) (discussing justification defenses generally) (internal quotation marks and alterations omitted).

**4.** At the end of his brief, Smith includes two sentences arguing that there was also a Rule 11(c) violation in this case because the judge's failure to explain that "unlawful possession might sometimes be justified by necessity or duress" rendered Smith's plea "involuntary." Assuming *arguendo* that this fleeting reference preserves this issue, we find the contention to be without merit. Rule 11 does not require the district court to provide the defendant and his counsel with a tutorial on every conceivable defense and then secure a waiver for each one. *See Lumpkins,* 845 F.2d at 1451.