*U.S. v. Handy*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand eighteen.

PRESENT:
> JON O. NEWMAN,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> RICHARD J. SULLIVAN,
> > *District Judge.*\*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                             No. 15-3177-cr

DWAYNE HANDY,

> *Defendant-Appellant*,†

BROCK YANCY, AKEEM SHAW, LARNELL HOUSTON, ROSALYN EDWARDS,

> *Defendants.*

---

\* Judge Richard J. Sullivan, of the United States District Court for the Southern District of New York, sitting by designation.
† The Clerk of Court is directed to amend the caption to conform to the above.

FOR APPELLANT:                        JESSE M. SIEGEL, Esq., New York, NY.

FOR APPELLEE:                         RAJIT S. DOSANJH, Assistant United States
                                      Attorney (Carla B. Freedman, Assistant
                                      United States Attorney, *on the brief*) *for*
                                      Grant C. Jaquith, United States Attorney
                                      for the Northern District of New York,
                                      Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 28, 2015, is **AFFIRMED**.

Dwayne Handy appeals from a judgment of conviction entered against him on September 28, 2015, in the United States District Court for the Northern District of New York (Suddaby, *J.*), based on his guilty plea to: conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (the indictment's Count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) (Count 2); possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 5).[1] Handy was sentenced to a total of 180 months in prison and 5 years of supervised release.

Handy's prosecution followed an investigation by the DEA and the Syracuse City Police Department and his consequent arrest on April 15, 2014, as he was on his way by car to conduct a drug transaction. A set of keys was found on the car seat where Handy had been sitting during his arrest. The keys opened the doors of a suspected stash house in

---

[1] Handy was not named in Count 4 of the indictment, which charged only Brock Yancy, one of Handy's co-defendants, with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A), or in Count 6, which charged Yancy with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Syracuse located at 932 Butternut Street and a safe hidden inside the kitchen of the house. On the same day as their arrest of Handy, law enforcement agents executed a search warrant at 932 Butternut Street. Officers uncovered the hidden safe, which was discovered to contain 518 net grams of powder cocaine, 530 net grams of crack cocaine, 150 bags of heroin, a scale with cocaine residue, and $10,301 in cash. Officers also recovered four handguns from the house. One of these was hidden beneath a mattress in a room that also contained Handy's clothing and photographs of him.[2] The Government proffered as well that the landlord of 932 Butternut Street would testify that in or about November 2013, she had rented the residence to Handy, who paid, in cash, a monthly sum of around $600 or $650.

On appeal, Handy invokes two parts of Federal Rule of Criminal Procedure 11 in his challenge to his conviction on Count 3 for "possession of a firearm in furtherance of a drug trafficking offense." He argues that the District Court failed first, to determine that Handy understood the nature of Count 3, in violation of Rule 11(b)(1)(G); and second, to determine that there was a factual basis for Handy's guilty plea, in violation of Rule 11(b)(3).

Handy did not make a timely Rule 11 objection to the District Court. In these circumstances, we review the District Court's actions for plain error. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). Under the plain error standard, we will not reverse the District Court's judgment unless the defendant "demonstrates that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Martinez*, 862 F.3d 223, 245 (2d Cir. 2017) (internal quotation marks and alterations omitted).

We conclude that Handy has failed to establish that the District Court plainly erred. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

---

[2] A search of Handy's residence—at a different location—uncovered a money counter and another set of keys to the safe at the house located at 932 Butternut Street.

## I.

Handy first contends that the District Court violated Rule 11(b)(1)(G) by failing to ensure he understood the nature of Count 3. To achieve that assurance, he maintains, the District Court needed to inform him more explicitly about the meaning of the "in furtherance of a drug trafficking crime" element of the charge. We are not persuaded.

Rule 11 requires, in relevant part, that the district court "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). We have recommended that the court "describ[e] the elements of the offense in [its] own words," or provide that information "by reading the indictment to the defendant where the pertinent count spells out the elements of the offense and the circumstances indicate that this will be sufficient." *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997).

Here, the District Court had the Clerk read aloud the charges contained in the indictment at Handy's change-of-plea hearing. The charge specified each element of the crime established in 18 U.S.C. § 924(c)(1)(A) and listed each specific firearm that Handy was alleged to have used "in furtherance of" the two cited drug trafficking offenses.[3] In addition, at that hearing, Handy twice confirmed to the District Court judge, under oath, that he had discussed the charges with his attorney and that he understood the charges against him. Under these circumstances, there is no reason to believe that Handy misunderstood the nature of the charges. Handy was 36 years old at the time of the plea hearing and had completed one year of college. He suffered no disability apparent from the record, nor does he claim one. In this setting, the District Court was entitled to rely on the reading of the indictment and Handy's assurance that he understood the charge to satisfy Rule 11(b)(1)(G).

---

[3] Count 3 reads in full: "DWAYNE HANDY, aka 'Peru,' aka 'DJ,' knowingly and intentionally possessed the following firearms: (1) Glock, Model 17, 9mm handgun, serial number USA-0451; (2) Ruger, Model SR40, .40 caliber handgun, serial number 34225603; (3) Heckler and Koch, Model GMBH, .45 caliber handgun, serial number 25-097597; and (4) Smith and Wesson, .22 caliber handgun, serial number UBV-7700, in furtherance of drug trafficking crimes for which he may be prosecuted in a court of the United States, to wit: violations of Title 21, United States Code, Sections 841(a)(1) and 846. In violation of Title 18, United States Code, Section 924(c)(1)(A)." App'x 18.

The "in furtherance of" element of the offense is not so complex or abstruse as to require an extended explanation.

Even if it could be argued that the District Court might better have elaborated on the meaning of "in furtherance of," Handy's Rule 11(b) challenge fails on plain error review because "the record plainly shows that the defendant understood the nature of the charges." *Maher*, 108 F.3d at 1521. Handy attended an earlier detention hearing before a magistrate judge in which the Government explained that Handy used 932 Butternut Street as a "stash house" to store drugs, drug paraphernalia, and drug proceeds, which he "protect[ed] with loaded firearms." Gov't App'x 26. Although when Handy was arrested he had no gun on his person, his stash house contained four. The magistrate judge explained that "weapons planted at various locations in the stash house are consistent with the practice of being prepared to protect your supply of drugs and your supply of money from people who are trying to take them from you." Gov't App'x 39-40. He remarked as well that "[t]he dangers of gun violence associated with drug dealing [are] undeniable, and it's highlighted in this case by the seizure of no fewer than four handguns at the stash house at which this defendant clearly maintained a large supply of drugs as well as money and other paraphernalia." Gov't App'x 40. These exchanges, made in Handy's presence, underscored that the charges against Handy under section 924(c)(1)(A) were not simply for possession of firearms, but for using those firearms to protect the drugs and drug proceeds also found at 932 Butternut Street—in other words, "in furtherance of" his drug trafficking crimes.

Handy also urges that the District Court's question to him during the change-of-plea hearing as to whether he possessed the guns "during the time" he sold drugs was misleading. According to Handy, the question implied that the Government would need to prove only the temporal overlap of his firearm possession and his drug dealing to sustain a section 924(c) charge. His argument misses the mark. The District Court asked this question during the Government's oral review of the evidence it would have adduced at trial, and not while informing Handy of the elements of the "in furtherance of" offense. In these circumstances, we find it difficult to see how the District Court's question could have reasonably misled

5

Handy about the elements of Count 3. In sum, we reject his challenge and find no clear violation of Rule 11(b)(1)(G).

## II.

Handy argues next that the District Court failed to ensure that there was a sufficient factual basis for his guilty plea on the section 924(c) count because the record did not establish that the firearms Handy possessed were actually used in furtherance of the drug trafficking crime. Therefore, he submits, the judgment entered against him is tainted by a violation of Rule 11(b)(3). We reject this argument.

Rule 11(b)(3) requires that, before entering judgment, the district court "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). This rule is "designed to 'protect a defendant who is . . . pleading voluntarily . . . without realizing that his conduct does not actually fall within the charge.'" *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (quoting *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). To comply with Rule 11, the "district court must simply satisfy itself that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Robinson*, 799 F.3d 196, 199 (2d Cir. 2015) (internal quotation marks omitted). The court may find the factual basis for the plea anywhere in the record, including in "the presentence report or whatever means is appropriate in a specific case." *Smith*, 160 F.3d at 121 (internal quotation marks and alterations omitted).

Handy does not dispute that he possessed the four firearms described in the indictment, nor could he without challenging his conviction under section 922(g)(1), in Count 5, for being a felon in possession of these firearms. On appeal, he challenges only whether the District Court ensured there was a factual basis for concluding that he possessed the firearms "in furtherance of" drug trafficking crimes. We have previously held that "the mere presence of a weapon at the scene of a drug crime, *without more*, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (emphasis in original). Instead, the "in furtherance of" element requires the Government to establish a "a specific 'nexus' between the charged firearm and the

6

federal drug trafficking crime." *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008) (internal quotation marks and alterations omitted). At the same time, "a drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." *Snow*, 462 F.3d at 62-63. We have held that a nexus may be inferred where the firearms were found in a house, loaded, and near trace amounts of drugs, drug proceeds, and drug paraphernalia. *Id.* at 63.

Handy's claim, at its core, seems simply to be that because three of the four guns found at 932 Butternut Street were unloaded and hidden, the Government could not show that they were used in furtherance of the drug conspiracy. This contention is implausible and ignores the abundant record evidence suggesting that Handy possessed the firearms to protect the drugs and drug money stowed at the house. For example, at Handy's plea hearing, the Government proffered that a search of 932 Butternut Street yielded four guns (one of which was both stolen and loaded); numerous rounds of suitable ammunition; significant amounts of crack cocaine, powder cocaine, and heroin; $10,301 in cash; and a scale bearing a residue of crack cocaine. The single loaded gun was found hidden under a mattress, giving Handy easy access to it in the event the house was subject to a robbery attempt when he was asleep there. Another handgun, albeit unloaded, was hidden under a floorboard of the kitchen sink, close to the safe in the stove, where investigators found drugs, a scale, and cash. Two other guns, together with ammunition, were hidden in another room behind a ceiling tile.

Keeping a loaded gun under a mattress and hiding three other guns in various locations in a stash house is consistent with using the firearms to protect narcotics and drug proceeds, as we have discussed elsewhere. *See Snow*, 462 F.3d at 63. The proximity between the firearms, ammunition, drugs, proceeds, and drug paraphernalia "militate against an inference of innocent use" and provide, instead, a factual basis for Handy's plea. *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005). The District Court had ample basis to conclude

that there was a factual basis for the plea. Its acceptance of Handy's plea was not plainly erroneous.

$$* \; * \; *$$

We have considered Handy's remaining arguments and find them to be without merit. The judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court